IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      v.                                    Case No.:    1:23-cr-00203-DLF

HOLLY DIONNE CHRISTENSEN,
      Defendant.

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, HOLLY DIONNE CHRISTENSEN, comes now and submits the following:

**I.**    **Objections to Presentence Report**

The defendant does not object to any of the factual assertions in the report.

**II.**    **Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well. Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)    the need for the sentence imposed—
>     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)    to afford adequate deterrence to criminal conduct;
>     (C)    to protect the public from further crimes of the defendant; and
>     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)    the kinds of sentences available;
> (4)    the kinds of sentence and the sentencing range established for—
>     (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the

       guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.  The Guidelines are not the only consideration, however.  Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented.  If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one.  After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A.  Advisory Sentencing Guidelines

As noted in the presentence report the federal advisory guidelines do not apply to the single count of conviction.  The statutory maximum period of incarceration is six months.

2

B. § 3553(a) Sentencing Factors

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a). The defendant submits an application of these factors to the case at bar leads to the conclusion that a probationary sentence would be sufficient and not greater than necessary.

1. History and Characteristics of The Defendant

The presentence investigative report summarizes Mrs. Christensen's background. Although the guidelines do not apply to her offense of conviction, an application of the guidelines to her criminal history would produce a category I. She has no prior convictions. Her criminal history is devoid of any arrests for weapons, firearms, or crimes of violence. As the government acknowledges, she has "a stable family and work environment." Government Sentencing Memorandum (Dkt. 47), p. 10.

Mrs. Christensen does not have a history of substance abuse or mental illness. She is a beloved mother and grandmother. Attached to this pleading are forty-nine letters of support written by family and friends who know her best. They describe her as a "compassionate and loving mother and friend. She has been highly involved in church throughout her life, and is always willing to help anyone in need, along with putting people before herself." Allison Archambeau Letter to Judge dated November 28, 2023. Ms. Archambeau further writes, "she loves to help the community in any way possible whether that be volunteer work or a job." Such descriptions run contrary to the imagine the government paints of Mrs. Christensen. Although she has

3

acknowledged the wrongfulness of her conduct on January 6, 2021, it does not represent the total sum of her being.

A common denominator in many of the letters written to the court discuss Mrs. Christensen's strong faith in God and care for her community. She is clearly a valued member of the community and does much to serve it. This service includes volunteering at local schools and community activities. In writing to the court Melissa Pettit notes her, "exceptional kindness and willingness to help others. She has consistently gone above and beyond to support those around her, making a positive impact on everyone she meets. Whether it's lending a helping hand or offering a kind word, Holly's generosity leaves an impression." Melissa Pettit Letter to Judge dated December 1, 2023.

There is nothing about Mrs. Christensen's background which would warrant any period of incarceration. Exclusive of the facts and circumstances of the instant case she has lived a law-abiding existences. She is a valued member of her community who is viewed as a positive influencer. In fashioning a sentence which is sufficient, but not greater than necessary Mrs. Christensen humbly asks this Honorable Court to consider the totality of her history.

2. **Nature of the Offense**

Mrs. Christensen fully acknowledges the nature of the offense. She entered a plea of guilty and embraces the statement of offense filed in conjunction with her plea agreement with the government. As the government notes she entered a guilty plea shortly after the filing of the criminal information in District Court. The events of January 6, 2021, were disturbing to our nation. Mrs. Christensen understands that she unfortunately played a role in the events.

Mrs. Christensen, like millions of Americans, became convinced that the results of the 2020 presidential elections were the result of fraud. This belief was fueled by Congressional leaders and the President of the United States. Mrs. Christensen's original intent was to simply attend the demonstration at the United States Capitol. It was not to participate in a violent attack on the Capitol. Unlike others, Mrs. Christensen was unarmed. She was not a part of any organized pre-planning to attack the Capitol. In the company of her husband Mrs. Christensen entered the Capitol without the use of force. Once in the Capitol she did not engage in any assaults on law enforcement. She remained in the building for approximately 39 minutes. Part of her time in the building was spent searching for a public restroom and making use of it. It should also be noted that she did not destroy any property while in the building.

On January 6, 2021, Mrs. Christensen, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol. This Honorable Court is all too familiar with what would soon follow. It is noteworthy that Mrs. Christensen did not assault any member of law enforcement. She entered the Capitol after others had caused the breach. Nor did Mr. Christensen use any weapons.

Although the government suggests otherwise, there is nothing particularly aggravating about her conduct leading up to the events of January 6, her actions on January 6, or her actions since that would warrant a harsh sentence. Again, there is no evidence that she came to the Capitol with the intention of committing any crime. Unlike many who have been similarly prosecuted there are no evidence of social media posts or text messages demonstrating her intention to storm the Capitol. She is also distinguishable in that she did not bring, possess, or use any weapons. There is no evidence of her verbally or physically assaulting members of law enforcement. And

5

after January 6, unlike others, she did not take to social media to boast about her involvement. Individual and collectively these factors support a sentence of probation, not incarceration.

### 3.  Need to Deter

Since her arrest Mrs. Christensen has been on pretrial supervision. She remains under restrictions imposed by this Court. During that time, she has not been subject to any new arrest. She has complied with all conditions. The restraints on her liberty have been consequential. It provides more than adequate specific deterrence for Mrs. Christensen. Most significantly she will forever be reminded of his role in one of the darkest days in our country's history. It is something that she will be confronted with for the rest of her life.

Beyond specific deterrence this Court must also account for general deterrence. Even under this analysis no period of incarceration is warranted. As the Court knows, Mrs. Christensen is not the only individual prosecuted for her involvement in January 6. More than 1,000 individuals have arrested. This fact alone serves as a deterrence to the general public. Some have received lengthy prison sentences. Lives have been disrupted. There is no reason to believe that imposing a prison term on Mrs. Christensen would do anything more to deter the general public from committing similar offenses. The world is on notice that such conduct will lead to serious consequences.

### 4.      Need to Avoid Unwarranted Disparities

This Honorable Court must remain mindful of the need to avoid unwarranted disparities between similarly situated defendants. The government advocates for a sentence of 45 days of incarceration. Again, the advisory guidelines do not apply. Mrs. Christensen's conviction is a misdemeanor. In determining an appropriate sentence Mr. Christensen urges this Honorable Court

6

to examine and consider other sentences imposed on defendants convicted of criminal offenses connected with January 6.

Again, Mr. Christensen is not before the Court on a felony conviction. Her offense did not involve any acts of violence. She has no prior convictions. Consistent with the sentences imposed on other similarly situated January 6 defendants a sentence of probation is appropriate.

There is no legitimate reason to treat Mrs. Christensen significantly harsher than others who have been held accountable for their participation in the January 6 events. Yes, Mrs. Christensen violated the law. However, she did not physically attack any law enforcement officers. She did not directly cause any bodily injury to any law enforcement officers. She does not stand convicted of a conspiracy offense. She did not possess or employ any weapons.

This Honorable Court understands many of those convicted of January 6 offenses possessed weapons. Many employed pepper and bear spray. Some offenders used other weapons against law enforcement. All these actions are far more serious transgressions than those performed by Mrs. Christensen. Her punishment should be reflective of her actions and should be imposed with an understanding of the treatment of others.

Mrs. Christensen submits the comparison to others made by the government in her sentencing memorandum are inappropriate. She further submits a 45-day period of incarceration would be greater than necessary.

*United States v. John Hubert Getsinger,* 21-CR-00607 (EGS), and *United States v. Stacie Ann Hargis-Getsinger,* 21-CR-00670 (EGS).

The defendants were sentenced to serve 60 days of incarceration. Like Mrs. Christensen, they entered the Capitol after the initial breach by others. While inside the Capitol their respective conduct was similar. However, unlike those defendants there is no evidence that Mrs. Christensen

7

attempted to obstruct justice by destroying evidence. Nor did she "smoke marijuana at the Capitol grounds." Government Sentencing Memorandum, p. 14. As the government notes, after their offenses these defendants boasted about January 6 and expressed no remorse. Of course, Mrs. Christensen has done nothing of the kind.

*United States v. Matthew Webler*, 21-cr-741 (DLF)

Mr. Webler was sentenced to serve 45 days of incarceration. Mr. Webler had an extensive criminal history. Mrs. Christensen has none. While inside the Capitol Mr. Webler cheered and celebrated. Mrs. Christensen simply walked around the building. Like many others, Mr. Webler made post offense comments on social media boasting about his involvement. The same cannot be said for Mrs. Christensen. Notwithstanding these clear distinctions, the government advocates for Mrs. Christensen to receive the same sentence as Mr. Webler.

*United States v. Andrew Ericson,* 21-cr-506 (TNM)

Mr. Ericson was sentenced to serve 20 days of incarceration. Mr. Ericson entered the Capitol after the initial breach. This is similar to Mrs. Christensen. However, unlike Mr. Ericson Mrs. Christensen did not steal any items. Mr. Ericson stole a beer from the mini fridge located in the Speaker's Conference Room. He further had the audacity to take a selfie while in the conference room while resting his foot on a table. Mrs. Christensen's total offensive conduct involved walking around the building, nothing more. Yet, the government advocates for her to receive a sentence more than twice imposed on Mr. Ericson.

*United States v. Matthew Mazzocco*, 21-cr-54 (TSC)

Mr. Mazzocco received a sentence of 45 days. While in the Capitol he made comments acknowledging that his conduct was wrong and would likely lead to he and others getting in trouble. Nevertheless, he made time to take a selfie. Again, Mrs. Christensen did neither.

*United States v. Marilyn Fassell*

Ms. Fassell received a sentence of 30 days. She expressed no remorse for her conduct, and even discussed her actions with the media after the events of January 6. Unlike Mrs. Christensen she entered Speaker Pelosi's office and Senator Merkley's office. In comparison, Mrs. Christensen is remorseful for her conduct. The government's advocacy for a sentence 33% higher for her than imposed on Ms. Fassell is simply unwarranted.

Other Probationary Sentences

As the court is undoubtedly aware, many defendants convicted of misdemeanor offenses have received probationary sentences.[1] The common denominators between them appears to be (1) lack of evidence of any pre-planning; (2) no assaultive conduct; (3) no weapon possession; and (4) lack of criminal history. Mrs. Christensen squarely satisfies these criteria. Upon information

---

[1] *See United States v. Anna Morgan-Lloyd*, Crim. No. 21-164 (RCL)(36 months probation); *United States v. Valerie Ehrke*, Crim. No. 21-097 (PLF)(36 months probation); *United States v. Danielle Doyle*, Crim. No. 21-324 (TNM)(2 months' probation); *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM)(12 months probation); *United States v. Vinson, et al.*, Crim. No. 21-355 (RBW) (5 years probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation);; *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB)(2 years probation); *United States v. Douglas Wangler and Bruce Harrison*, Crim. No. 21-365 (DLF) (2 years probation); *United States v. Jonathan Sanders*, Crim. No. 21-384 (CJN)(3 years probation); *United States v. Jennifer Parks*, Crim. No. 21-363 (CJN)(24 months probation); *United States v. Douglas Sweet*, Crim. No. 21-041(CJN)(3 years probation); and *United States v. Thomas Gallagher*, Crim. No. 21-041 (CJN)(2 years probation).

and belief, move than 80 similarly situated defendants have received probationary sentences. Some have included periods of home incarceration and community service. Mrs. Christensen submits her conduct warrants a similar outcome.

### C. Recommended Sentence

Mrs. Christensen submits a sentence of probation would satisfy the legitimate goals of sentencing. Such a sentence followed by a period of supervised release would be consistent with other sentence imposed in those convicted of criminal violations arising out of the January 6 events at the Capitol.

### III. Conclusion

Wherefore the defendant, **HOLLY DIONNE CHRISTENSEN**, respectfully requests that this Honorable Court sentence to a period of probation.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant HOLLY DIONNE CHRISTENSEN

**CERTIFICATE OF SERVICE**

      I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on December 11, 2023.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant HOLLY DIONNE CHRISTENSEN